Jennifer D. Stein, Esq.,
Law Offices of Jennifer D. Stein, a CA PC
26401 Calle Rolando
San Juan Capistrano, CA 92675
(213) 446-5366

Representing Plaintiffs Jennifer Diane Stein and Kilian Adam Goldin

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER DIANE STEIN and KILIAN ADAM GOLDIN,<br><br>Plaintiffs,<br>vs.<br><br>JOHN DOE; and Does 1 through 5, inclusive,<br><br>Defendant. | Case No.:<br><br>COMPLAINT FOR DEFAMATION; INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS; and INJURIOUS FALSEHOOD/COMMERCIAL DISPARAGEMENT |

Plaintiffs Jennifer Diane Stein ("Stein") and Kilian Adam Goldin ("Goldin") allege, on personal knowledge as to their own acts and records and on information and belief as to Defendant John Doe ("Doe"), as follows:

## NATURE OF THE ACTION

1. This action concerns a coordinated series of substantially similar anonymous complaints containing false and misleading statements submitted to real-estate licensing and regulatory agencies during 2026 concerning multi-state designated or principal brokers, including Stein and Goldin. The complaints contain false and misleading statements and advance similar theories concerning multi-state brokerage structures, supervision, historical licensing disclosures, and the asserted

inability of a broker to supervise numerous separately owned entities across many jurisdictions and contain false and misleading statements.

2. Complaints directed at both Stein and Goldin assert that the anonymous complainant possesses direct personal knowledge arising from prior or professional dealings, request confidential treatment of the complainant's identity, and ask regulators to examine licensing records and business operations beyond the face of the complaint. Other than Doe, neither Stein nor Goldin know who could truthfully fit the complainant's asserted description of a concerned member of the public or licensed real-estate professional with direct personal knowledge from professional dealings with them.

3. Plaintiffs do not seek to impose liability because Doe petitioned government agencies or reported genuinely suspected regulatory violations. Plaintiffs' claims are directed to misleading and false statements of fact that Plaintiffs contend Doe knowingly or recklessly supplied, repeated, and amplified across jurisdictions, including factual characterizations that Plaintiffs contend were unsupported by the underlying records.

4. The false and misleading submissions have caused multiple agencies to open investigations, require written responses, review historical applications, and consider potential licensing consequences. Plaintiffs have incurred and continue to incur substantial professional fees, employee time, compliance expense, business disruption, and reputational harm as a result of the false and misleading complaints.

5. Doe has concealed his or her identity by submitting all complaints anonymously. Plaintiffs therefore bring this action against Doe and intend promptly to seek narrowly tailored early discovery under Federal Rule of Civil Procedure

26(d), followed by subpoenas under Rule 45, solely as necessary to identify Doe and preserve evidence concerning the challenged communications.

## PARTIES

6. Plaintiff Jennifer Diane Stein is a natural person domiciled in California and is a citizen of California for purposes of 28 U.S.C. § 1332. Stein is a real estate broker licensed in fifty (50) states and serves or has served as designated, qualifying or principal broker for multiple real-estate entities in numerous jurisdictions.

7. Plaintiff Kilian Adam Goldin is a natural person domiciled in Texas and is a citizen of Texas for purposes of 28 U.S.C. § 1332. Goldin is a real estate broker licensed in forty-four (44) states, including California, and maintains a real estate brokerage office within the Central District of California, and serves or has served as designated, qualifying, or principal broker for multiple real-estate entities in numerous jurisdictions.

8. Defendant Doe is the presently unidentified person whom Plaintiffs presently believe authored, orchestrated, submitted, caused to be submitted, and/or materially participated in the anonymous complaints containing false and misleading statements, described more fully below. Plaintiffs do not know for certain Doe's true name or citizenship. Upon information and belief, and for the reasons alleged below concerning the unusually limited nexus of persons positioned to know both Plaintiffs and their respective relationships with SkyView Advisors LLC, Plaintiffs presently believe the responsible party (Doe) is domiciled in Massachusetts. Plaintiffs will amend this Complaint if discovery supplies a good-faith basis to do so.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a), because the matter in controversy as to each Plaintiff independently exceeds $75,000, exclusive of interest and costs, and Plaintiffs allege complete diversity between Plaintiffs and Doe. Stein is alleged to be a California citizen, Goldin is

alleged to be a Texas citizen, and Doe is presently believed, upon information and belief, to be a Massachusetts citizen.

10. Upon information and belief, Doe is domiciled in Massachusetts. Plaintiffs' belief is based on specific information concerning a Massachusetts resident who is within the limited universe of persons known to Plaintiffs who would have knowledge of both Stein's and Goldin's multi-state real-estate licensing activities, their respective relationships with SkyView Advisors, LLC (as described hereinbelow), and the matters referenced in the anonymous complaints. Publicly available information further confirms that this individual has substantial and longstanding ties to Massachusetts. Plaintiffs do not presently allege that this individual is Doe. Rather, these facts provide a good-faith factual basis for Plaintiffs' present allegation, subject to confirmation through the narrowly tailored identification discovery sought in this action.

11. Plaintiffs allege that this Court may exercise specific personal jurisdiction over Doe with respect to Stein because Doe intentionally directed a sustained course of allegedly tortious conduct at her California-centered professional and business operations. Plaintiffs allege that this Court may exercise specific personal jurisdiction over Doe with respect to Goldin because Doe intentionally directed a sustained course of allegedly tortious conduct at Goldin's California-licensed brokerage operations and existing California business relationships.

12. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and injuries giving rise to Plaintiffs' claims occurred in this District. Stein resides and conducts substantial professional and business activities within this District, and the anonymous complaint campaign was directed at professional licenses and existing brokerage relationships upon which her California-centered business operations depend. Stein received and responded to regulatory inquiries, assembled records, communicated

with affected businesses and regulators, and suffered substantial business disruption and other alleged injury within this District.

13. Goldin likewise holds a California real estate broker's license, conducts substantial professional and business activities within this District, and maintains a real estate brokerage office within this District. His California licensure, brokerage operations, professional reputation, and existing and prospective California business relationships are among the professional interests allegedly placed at risk by Doe's coordinated multi-state complaint campaign. Goldin has been required to devote professional time and resources to responding to and addressing the regulatory consequences of the challenged submissions, including from his California brokerage operations.

14. Plaintiffs further allege that the complaints directed at Stein and Goldin constitute components of the same coordinated course of conduct by Doe, involving overlapping subject matter, substantially similar allegations concerning multi-state brokerage and supervision, and the common SkyView Advisors, LLC nexus described below. Accordingly, a substantial part of the events and resulting injuries giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. The Anonymous Multi-State Campaign against Stein and Goldin

15. Beginning no later than July and August 2026, Stein received, or was notified by regulators of, substantially similar anonymous complaints or related regulatory inquiries in the following seventeen jurisdictions: Arizona, Colorado, Florida, Iowa, Illinois, Kansas, Louisiana, Maine, Michigan, North Carolina, Nebraska, Oregon, Tennessee, Wisconsin, Minnesota, Montana, and Washington. Stein alleges that these submissions repeatedly draw, in a false and misleading manner, from the same Arkansas and Tennessee matters, a then-pending Arizona investigation, historical application or renewal disclosures, and substantially similar multi-state supervision or "broker-in-name-only" theories. The inclusion of a

jurisdiction in this list does not mean that its agency accepted the allegations, opened a formal investigation, or imposed discipline.

**Table 1. Stein Complaint / Inquiry Status Summary**

| Jurisdiction | Known Status / Disposition | Recurring Allegation or Feature |
|---|---|---|
| Arizona | Pending complaint/investigation; no final discipline | TN matter; broader Arizona allegations later repeated elsewhere in complaints to other states |
| Colorado | Substantially similar complaint received | AR/TN; multi-state supervision |
| Florida | Complaint filed; investigation initiated | AR/TN/AZ; supervision; disclosure issues |
| Iowa | Complaint received; preliminary investigation initiated | AR/TN/AZ; licensing/disclosure issues |
| Illinois | File closed without action after Stein responded | Substantially similar allegations |
| Kansas | Anonymous complaint received; written response requested | AR/TN/AZ; historical disclosures; supervision |
| Louisiana | Complaint received; investigation opened | AR/TN/AZ; supervision; historical disclosures |
| Maine | Substantially similar complaint/inquiry received | Recurring multi-state allegations |
| Michigan | Substantially similar complaint/inquiry received | AR/TN/AZ; supervision; historical disclosures |
| North Carolina | Anonymous complaint; Letter of Inquiry, Case No. D27-0318 | AR/TN/AZ; supervision |

| Jurisdiction | Known Status / Disposition | Recurring Allegation or Feature |
|---|---|---|
| Nebraska | Formal Commission Complaint, Case No. 2026-045 | Recurring multi-state allegations |
| Oregon | File closed without action after Stein responded | Substantially similar allegations |
| Tennessee | Substantially similar complaint/inquiry received | AR/TN/AZ; supervision |
| Wisconsin | Substantially similar complaint/inquiry received | AR/TN/AZ; supervision |
| Minnesota | Ongoing Department investigation, File No. 109781 | Recurring multi-state allegations |
| Montana | Complaint No. 2026-RRE-13917 | AR/TN/AZ; disclosure issues |
| Washington | Department of Licensing inquiry, Case No. 2026-07-3394-00REA | AR/TN/AZ; disclosure issues |

16. The Illinois and Oregon closures are significant to the pattern allegation only in the limited sense that they demonstrate that repeated anonymous allegations have not uniformly resulted in discipline. Plaintiffs do not contend that those dispositions control another regulator. Rather, the seventeen-state sequence, compressed timing, recurring source material, similar factual theories, and repeated requests for confidential treatment provide a concrete basis to investigate whether the submissions share a common author, coordinator, or transmission source.

17. Beginning no later than July and August 2026, Goldin received, or was notified by regulators of, substantially similar anonymous complaints or related regulatory inquiries in Colorado, Iowa, North Carolina and Tennessee. In the Tennessee complaint Doe implicated Skyview Advisors, LLC and, as described hereinbelow, allowed Plaintiffs to discover the nexus of the complaints against them.

Goldin alleges that these submissions repeatedly draw, in a false and misleading manner, historical application or renewal disclosures, and substantially similar multi-state supervision or "broker-in-name-only" theories. The inclusion of a jurisdiction in this list does not mean that its agency accepted the allegations, opened a formal investigation, or imposed discipline.

**Table 2. Goldin Complaint / Inquiry Status Summary**

| Jurisdiction | Known Status / Disposition | Recurring Allegation or Feature |
|---|---|---|
| Colorado | Substantially similar complaint received | Multi-state supervision; historical application or renewal disclosures |
| Iowa | Complaint received; preliminary investigation initiated | Multi-state supervision; historical application or renewal disclosures |
| North Carolina | Dismissed by real estate commission without opening file. | Multi-state supervision; historical application or renewal disclosures |
| Tennessee | Substantially similar complaint received | Multi-state supervision; historical application or renewal disclosures |

### B. False and Misleading Statements About Stein

18. In all or almost all of the false and misleading anonymous complaints against Stein, Doe falsely alleges that there are "Three Confirmed Prior Disciplinary Actions" against Stein and then proceeds to cite a 2021 Arkansas Consent Order, a 2024 Tennessee Consent Order and an "Arizona ADRE Formal Complaint".

19. In 2021, the Stein and the Arkansas Real Estate Commission entered a Consent Order concerning a lapse in the timely renewal of Stein's Arkansas principal-broker license. The public record lists file number FH 3701 and a $350 fine and states that activities requiring a license occurred while the license was expired. The anonymous complainant falsely amplifies that the Consent Order was the result of a "Formal Hearing". There was no formal hearing. The entire matter

was resolved via USPS mail during Covid. Stein promptly paid the fine and the matter was concluded with no disciplinary action taken against Stein's Arkansas license.

20. The false and misleading complaint regarding Arkansas further indicates as a "synopsis" that Stein participated in licensed activities while her license was inactive. This is false. After receiving the anonymous complaint, Stein asked the Arkansas Real Estate Commission to review its historical file and identify the activity referenced in the order. An Arkansas investigator advised that she had reviewed the file, explained that even representing oneself as "licensed in Arkansas" during the lapse could have been noncompliant, and indicated that their file does not identify a particular transaction, client representation, or brokerage service performed during the lapse. Additionally, Stein checked her transaction files and she had no active transactions during the brief lapse.

21. In 2024, the Stein and the Tennessee Real Estate Commission resolved a matter by Consent Order concerning Stein's supervisory responsibility for an affiliated licensee's individual errors-and-omissions insurance. The order imposed a $400 civil penalty. Stein's records reflect that the affiliated licensee had decided to leave the real-estate industry, had obtained employment in another field, and was no longer conducting licensed real-estate activity. Stein disputes the false anonymous allegations asserting as fact that the affiliate continued to conduct licensed activities during the relevant period. The fine was paid promptly and the matter was closed with no disciplinary action taken against Stein's Tennessee license.

22. With regard to the false and misleading assertion regarding the Arizona ADRE Formal Complaint, Doe attaches a very detailed "Summary of Formal Complaint Filed", to the complaints submitted to the real estate commissions, however, as of the date of the filing of this Complaint, the Arizona ADRE has not provided Stein with a copy of the complaint filed by the anonymous complainant, rather, they opened an inquiry and requested information regarding the alleged

Tennessee matter only. This distinction is especially important because Doe attaches or relies upon a very detailed purported summary of the underlying Arizona complaint containing allegations concerning separate businesses, ownership interests, supervision, transaction volume, and numerous alleged Arizona violations. Doe appears to possess detailed information concerning an Arizona complaint that the Arizona regulator itself has not provided to Stein. That circumstance strongly suggests that the person submitting these complaints either submitted the Arizona complaint, participated in its preparation, coordinated with its author, or obtained its contents from someone who did. What is clear, however, is that the complainant improperly converts allegations contained in an unresolved anonymous Arizona submission into purportedly established regulatory facts. Arizona has made no such findings.

23. Neither the Arkansas nor Tennessee matter resulted in suspension, probation, revocation, surrender, or restriction of Stein's real-estate license. Plaintiffs allege that Doe nevertheless repeatedly used those matters as predicates for broader assertions concerning Stein's honesty, supervision, and regulatory compliance. Additionally, the Arizona matter, falsely described as "Confirmed Prior Disciplinary Actions", in a very limited inquiry regarding the Tennessee matter only.

24. In almost all of the false and misleading complaints against Stein, Doe attributes a quote from Stein allegedly found on realtysage.com and uses the purported quote imply that Stein provides co-brokerage services in violation of real estate regulations. Stein has no knowledge of realtysage.com, did not provide them with any quote and the alleged quote cannot be found on realtysage.com.

25. In all of the false and misleading complaints against Stein, Doe indicates that [the real estate commission receiving the complaint] "shows no disciplinary action visible" against [Stein's license in that state]. Doe then goes on to falsely assert that because no disciplinary action is visible in that state, that this is clear evidence that Stein failed to report the Tennessee, Arkansas and Arizona

"disciplinary actions" to that state. Doe does so without recognizing or acknowledging that each state only reports its **own** disciplinary actions against licensees. Under no circumstance would [for instance, the North Carolina Real Estate Commission] report disciplinary action taken against a licensee in [for instance, Tennessee]. Thus, Doe continues to amplify false and misleading information against Stein in each complaint.

26. The foregoing examples are not exhaustive. The anonymous submissions contain additional substantially similar factual assertions and material mischaracterizations concerning Plaintiffs' licensing histories, professional activities, supervision, and regulatory compliance. Plaintiffs have identified the statements presently known to them based upon the complaint materials and agency correspondence currently available. Certain recipient agencies have not provided Plaintiffs with copies of the underlying anonymous submissions. Plaintiffs reserve the right to amend this Complaint as additional submissions and source records are obtained through lawful discovery.

### C. False and Misleading Statements About Goldin

27. On July 18, 2026, an anonymous complainant submitted a four-page complaint to the Tennessee Real Estate Commission against Goldin concerning his role as principal broker for SkyView Advisors LLC and his multi-state broker relationships. Goldin serves as the designated broker for one entity in Tennessee, Skyview Advisors, LLC.

28. The Goldin complaint states that it was submitted by a licensed real-estate professional with "direct personal knowledge" and later asserts that the complainant has direct personal knowledge "from professional dealings with Goldin." It requests confidential treatment of the complainant's identity. Other than Doe, Goldin does not know who could truthfully fit that asserted description.

29. The Goldin complaint alleges, among other things, that Goldin serves or has served as broker for approximately 22 separately owned brokerage entities

across approximately 30 states; and then goes on to falsely and misleadingly indicate that the scale of those relationships demonstrates an absence of genuine supervision in Tennessee; and that historical Tennessee applications and renewals should be audited for disclosure of other-state licenses. It asks Tennessee to examine transaction files, trust/escrow records, advertising and supervision records, pull original applications and renewals, coordinate with regulators in other states, and consider discipline.

30. The Tennessee complaint also falsely and misleadingly indicates that, "[b]ased on complainant's direct personal knowledge: Goldin does not review any transaction conducted by these entities, before or after closing. He does not inspect or oversee any trust or escrow account. He does not review or approve advertising…". All of these claims are demonstrably false. For instance, Skyview Advisors, LLC, does not collect trust or escrow funds, therefore does not have a trust or escrow account for Goldin to "inspect or oversee".

31. A substantially similar anonymous complaint was also submitted against Goldin to the Colorado Real Estate Commission despite Goldin's Colorado license being inactive. The Colorado complaint identifies Goldin as an employing-level/responsible broker, states that it is submitted "by a licensed real-estate professional with direct personal knowledge", requests confidential treatment of the complainant's identity, and then, falsely and misleadingly advances the same core theory that unlicensed principals conduct brokerage and property-management activity under Goldin's licenses while Goldin provides no genuine supervision in exchange for a monthly fee. Doe provides no evidence to support these baseless claims and even admits in the Colorado complaint that Goldin's Colorado license is currently inactive and that there was "[n]o Colorado entity affiliation identified during the active period".

32. The Colorado complaint likewise falsely and without any evidence, alleges that the scale of Goldin's multi-state broker relationships corroborates an

absence of supervision, lists numerous entities for which he serves or has served as designated, qualifying, principal, or responsible broker, and asks Colorado to audit Goldin's applications and renewals for disclosure of other-state licenses and to coordinate with other states where parallel complaints have been filed.

33. On or about July 28, 2026, the North Carolina Real Estate Commission also received an anonymous complaint concerning Goldin claiming that Goldin facilitates unlicensed real estate activity and does not provide the required supervision for the entities for which he is the Broker in Charge. The anonymous complainant claims to be "a licensed real estate professional with direct personal knowledge of the matters described herein". The North Carolina Real Estate Commission forwarded Mr. Goldin a copy of the complaint on August 27, 2026 and indicated, "[t]he complaint does not indicate any violation of the License Law or Commission rules, and we do not intend to investigate it."

34. The Iowa Real Estate Commission has also received a complaint concerning Goldin. In an August 8, 2026 inquiry letter, Iowa summarized the complaint as alleging that Goldin failed to provide required regulatory supervision, that unlicensed individuals engaged in residential brokerage, commercial brokerage, and property management under his license, and that he knowingly permitted those activities in exchange for a monthly fee. Iowa advised that the matter remained in a confidential pre-investigatory phase and requested Goldin's written response. Goldin was not provided with a copy of the anonymous Iowa complaint and therefore pleads only the allegations Iowa itself summarized in its inquiry letter.

**D. SkyView Advisors, LLC Nexus and Basis for**
**Belief About the Identity of Doe**

35. The anonymous Tennessee complaint concerning Goldin expressly represents that its author is a licensed real-estate professional possessing direct personal knowledge derived from professional dealings with Goldin. The complainant specifically identifies SkyView Advisors, LLC and makes detailed

factual assertions concerning SkyView Advisors, LLC's principals, their licensing status, Goldin's relationship with SkyView Advisors, LLC, the nature and extent of his alleged supervision, and an alleged monthly-fee arrangement under which Goldin serves as broker.

36. SkyView Advisors, LLC provides a significant factual nexus between Plaintiffs. Goldin serves and has served as a designated broker for SkyView Advisors, LLC in Tennessee, while Stein separately serves as a designated broker for SkyView Advisors, LLC in other states. Plaintiffs are aware of only a limited universe of persons positioned to possess knowledge concerning both Plaintiffs' respective relationships with SkyView Advisors, LLC while also possessing knowledge concerning their separate multi-state real-estate licensing and brokerage activities. Plaintiffs are aware that persons within that limited universe have ties to Massachusetts.

37. Plaintiffs do not presently know whether any particular person within that limited universe authored, submitted, coordinated, assisted with, or otherwise participated in the anonymous complaints, and Plaintiffs expressly do not allege the identity of Doe based solely upon these circumstances, however, the nexus between Skyview Advisors, LLC, Goldin and Stein provides a good-faith factual basis for Plaintiffs' present information-and-belief allegation that Doe is domiciled in Massachusetts and support narrowly tailored discovery to identify Doe and confirm Doe's citizenship.

### E. Common Features and Basis to Investigate Common Authorship

38. Plaintiffs allege on information and belief that the substantial similarities between the false and misleading complaints against Stein and the false and misleading Goldin complaints reflected in Tennessee, Colorado, North Carolina and Iowa - including subject matter, structure, asserted direct personal knowledge, confidentiality requests, multi-state supervision theories, historical-application audits, and requests for cross-jurisdiction regulatory scrutiny - provide a good-faith basis to investigate common authorship, coordination, or a common source. Plaintiffs do not allege that common authorship has already been proven. Identification discovery is necessary to determine actual authorship, submission paths, and the role of any person who assisted in preparation and transmission of the false and misleading complaints.

**Table 3. Recurring Features Across Stein and Goldin Complaint Streams**

| Recurring Feature | Stein Complaints | Goldin Complaints |
|---|---|---|
| Anonymous complainant | Yes | Yes |
| Confidentiality requested | Yes | Yes |
| Claims direct / personal knowledge | Yes | Yes |
| Multi-state broker relationships targeted | Yes | Yes |
| Failure-to-supervise / broker-in-name-only theory | Yes | Yes |
| Historical applications / renewals targeted | Yes | Yes |
| Requests cross-state regulatory scrutiny | Yes | Yes |
| SkyView relationship implicated | Yes | Yes |

### F. Resulting Investigations and Harm

39. The anonymous submissions caused or contributed to regulatory inquiries or response obligations concerning Stein across the seventeen jurisdictions

identified above. The records presently available include formal or preliminary investigative activity in states including Arizona, Colorado, Florida, Iowa, Kansas, Louisiana, Maine, Michigan, North Carolina, Nebraska, Tennessee, Wisconsin, Minnesota, Montana and Washington, while Illinois and Oregon advised Stein that their files were being closed without action. Other states transmitted complaints or requested responses. Goldin likewise faces materially similar complaint streams in Tennessee, Colorado, and Iowa.

40. Plaintiffs have been required, or reasonably expect to be required, to locate records, prepare submissions, respond to regulators, review licensing applications and disclosure questions, consult professionals, and devote substantial business time to proceedings generated by the anonymous complaints.

41. Plaintiffs allege that the challenged conduct was reasonably calculated to interfere with Stein's and Goldin's professional licenses and Plaintiffs' existing and prospective business relationships by inducing regulators to investigate, delay, condition, or potentially discipline licenses on which their businesses depend.

42. The amount in controversy as to each Plaintiff independently exceeds $75,000, exclusive of interest and costs. This allegation is made in good faith and is based on existing and threatened economic and professional injury caused by the challenged course of conduct, rather than on a nominal demand inserted solely to establish federal jurisdiction. The anonymous submissions have already caused each Plaintiff to devote substantial professional time to reviewing regulatory allegations, collecting historical licensing and business records, preparing written responses and supporting materials, communicating with regulators and affected businesses, and addressing related licensing and compliance issues. Plaintiffs have also incurred or experienced professional, administrative, compliance, and other expenses, together with diversion of time from revenue-producing activities.

43. The economic interests placed at risk extend materially beyond the expenses already incurred. Each Plaintiff maintains professional real-estate licenses

and broker relationships in multiple jurisdictions from which the Plaintiff derives professional income. The anonymous complaints expressly seek regulatory findings and discipline affecting those licenses. An adverse disciplinary disposition in one jurisdiction may itself trigger disclosure obligations in other jurisdictions, additional investigations or regulatory proceedings, further compliance costs, impairment or loss of existing broker relationships, and loss of future professional income. Plaintiffs allege these potential downstream consequences only to the extent they are reasonably grounded in their existing licensing relationships and disclosure obligations, and not as a claim that discipline or business loss is certain to occur.

44. As to Stein individually, the challenged submissions have already generated complaints or regulatory inquiries across numerous jurisdictions and have required substantial expenditures of professional time and resources. Stein's ability to maintain her professional licenses in good standing is integral to existing designated-broker and related professional relationships. In Florida alone, Stein presently receives more than $90,000 annually from existing brokerage relationships that depend upon her continued Florida real-estate licensure and regulatory standing. If the challenged complaint campaign results in the loss, suspension, or other material impairment of Stein's ability to maintain or use her Florida license, the resulting loss of existing Florida license-dependent compensation alone would exceed $90,000 annually. This figure does not include Stein's license-dependent compensation in other jurisdictions, professional and compliance expenses already incurred, diversion of professional time, business disruption, reputational injury, or other recoverable economic damages. Stein does not allege that loss of her Florida license is certain to occur or that she has already sustained the entire annual amount as damages. Rather, the existing Florida relationships demonstrate the concrete economic value of professional interests allegedly placed at risk by Defendant's conduct and provide additional support for Stein's good-faith allegation that the

amount in controversy on her claims individually exceeds $75,000, exclusive of interest and costs.

45. As to Goldin individually, the challenged submissions have resulted in regulatory complaints or inquiries in Colorado, Iowa, and Tennessee and have required substantial expenditures of professional time and resources. Goldin maintains existing license-dependent brokerage relationships in those three jurisdictions from which he presently earns more than $75,000 annually in the aggregate (although Goldin's license was inactive in Colorado at the time of the complaint, Goldin has since been offered a designated broker position in that state). If the challenged complaint campaign results in the loss, suspension, or other material impairment of Goldin's ability to maintain or use the licenses on which those relationships depend, the resulting loss of existing compensation from Colorado, Iowa, and Tennessee alone would exceed $75,000 annually. This figure does not include Goldin's license-dependent compensation in other jurisdictions, professional and compliance expenses already incurred, diversion of professional time, business disruption, reputational injury, or other recoverable economic damages. Goldin does not allege that loss of any license or brokerage relationship is certain to occur or that he has already sustained the entire annual amount as damages. Rather, these existing relationships demonstrate the concrete economic value of professional interests allegedly placed at risk by Defendant's conduct and provide additional support for Goldin's good-faith allegation that the amount in controversy on his claims individually exceeds $75,000, exclusive of interest and costs.

46. Plaintiffs seek compensatory damages in amounts to be proven at trial, together with any special damages, punitive or exemplary damages, attorneys' fees only to the extent legally recoverable, and equitable relief otherwise available under

the governing substantive law. Plaintiffs do not rely on speculative or legally unrecoverable amounts to satisfy § 1332.

## G. Does' Identity and Need for Early Discovery

47. Does identity and the submission paths for the complaints are uniquely within the possession of third parties. Relevant identifying information may include original email headers, sender addresses, portal-account information, submission identifiers, timestamps, source IP logs, account-registration information, original envelopes or envelope images, postmarks, mailing labels, tracking records, and other records sufficient to distinguish the author/orchestrator from any person who merely transmitted a physical mailing.

48. Plaintiffs intend to move for leave to take limited early discovery directed first to the recipient agencies and their complaint systems for the seventeen Stein jurisdictions identified above, together with the Tennessee, Colorado, and Iowa records associated with Goldin, and then, where a specific technical or mailing identifier is returned, to the relevant service provider. The discovery will be limited to source and transmission information tied to specific complaint submissions and will be designed to determine whether the independent Stein and Goldin complaint streams trace to the same person or coordinated sources.

49. Plaintiffs do not seek discovery of regulators' deliberative mental processes or confidential investigative substance beyond what is necessary and

legally discoverable to identify the source of the challenged submissions and preserve relevant transmission records.

## COUNT I – DEFAMATION

50. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

51. Doe published or caused false and misleading statements concerning one or more Plaintiffs to be published to third parties, including state licensing and regulatory agencies.

52. Plaintiffs allege that specific factual statements identified above and to be particularized after production of the original complaints were false or materially misleading, were of and concerning the respective Plaintiff, and were capable of damaging professional and business reputations.

53. Plaintiffs allege that Doe acted at least negligently as to falsity and, as discovery may show, knowingly or recklessly. As to Goldin and Stein, complaints expressly claim direct personal knowledge from professional dealings; other than Doe, Stein and Goldin do not know who could truthfully fit that description and Plaintiffs dispute material allegations concerning the asserted absence of supervision. Identification of the speaker is necessary to test the asserted basis of knowledge.

54. Plaintiffs recognize that communications to governmental bodies may constitute protected petitioning activity and may be subject to privileges, California anti-SLAPP protections, and/or Massachusetts General Laws chapter 231, § 59H depending on the governing law. Plaintiffs do not base liability merely on petitioning

activity and do not concede the applicability or scope of any privilege, immunity, or anti-SLAPP protection.

55. As a direct and proximate result, Plaintiffs allege actual damages, including professional expenses, business disruption, reputational injury, and other pecuniary loss in an amount to be proven at trial.

## COUNT II - INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS

56. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

57. Plaintiffs maintain existing and prospective advantageous business relationships dependent in material part on maintaining real-estate licenses and regulatory standing in multiple jurisdictions.

58. On information and belief, Doe knew of those relationships and of the importance of Plaintiffs' multi-state licensing status, as reflected by the false and misleading complaints' detailed identification of licenses, affiliated entities, renewals, regulatory records, and multi-state broker relationships.

59. Plaintiffs allege that Doe intentionally sought to interfere with those relationships by using knowingly or recklessly false factual assertions, material

mischaracterizations, and/or other improper means to induce regulatory action. Plaintiffs do not base this claim merely on Doe's act of petitioning a regulator.

60. Doe's conduct allegedly caused actual economic harm and disruption to Plaintiffs' existing and prospective business relationships, in an amount to be proven at trial.

**COUNT III - INJURIOUS FALSEHOOD / COMMERCIAL DISPARAGEMENT (PLEADED IN THE ALTERNATIVE)**

61. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

62. To the extent the governing law recognizes an applicable injurious-falsehood or commercial-disparagement theory on the facts ultimately established, Plaintiffs allege that Doe published false statements concerning Plaintiffs' business operations, licensing compliance, and ability to provide brokerage services, intending or reasonably expecting those statements to cause pecuniary loss.

63. Plaintiffs allege that Doe knew the statements were false or acted with reckless disregard for their truth, and that the publications caused specific pecuniary loss. Plaintiffs will amend to identify the statements and special damages with particularity after Doe is identified and the original submissions are obtained.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Enter judgment in Plaintiffs' favor on all claims proven at trial;

B. Award compensatory damages in an amount to be determined at trial;

C. Award special damages and other proven pecuniary losses;

D. Award punitive or exemplary damages only to the extent permitted by the governing substantive law and supported by the evidence;

E. Award taxable costs and any attorneys' fees authorized by contract, statute, or other applicable law;

F. Grant appropriate declaratory or equitable relief, if any, consistent with the First Amendment and applicable petitioning protections; and

G. Grant such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 28, 2026

Respectfully submitted,

JENNIFER DIANE STEIN and
KILIAN ADAM GOLDIN

By their attorneys,

Jennifer D. Stein, SBN 212913
Law Offices of Jennifer D. Stein, a CA PC
26401 Calle Rolando
San Juan Capistrano, CA 92675
Phone: (213) 446-5366
Email: jstein@jdsreservices.com